30 C.C.P.A. (Patents)

## SHUMAKER v. PAULSON et al.
### (two cases).

## PAULSON v. HYLAND (three cases).
### Patent Appeals Nos. 4689, 4690, 4692–4694.

Court of Customs and Patent Appeals.
June 1, 1943.

J. F. Mothershead and Joseph Y. Houghton, both of Washington, D. C. (Paul P. Stoutenburgh and Wade Koontz, both of Washington, D. C., of counsel), for Shumaker.

Harry A. Yerkes, Jr., of New York City (Lee B. Kemon, of Washington, D. C., of counsel), for Paulson.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

We are here called upon to review decisions of the Board of Appeals of the United States Patent Office in three interference proceedings, affirming in each case the decision of the Examiner of Interferences awarding priority of invention to the party Hyland. The numbers of these interference proceedings are Nos. 69,428 (Appeals 4689, 4690), 73,562 (Appeal 4692), and 73,564 (Appeals 4693, 4694).

There are also three other interference proceedings involving related subject matter, viz., No. 64,517 (Appeal 4684), Shumaker v. Paulson, 136 F.2d 700, 30 C.C.P.A., Patents, ——, No. 73,561 (Appeal 4691), Paulson v. Hyland, 136 F.2d 695, 30 C.C.P.A. Patents, ——, and No. 73,630 (Appeals 4695, 4696), Paulson v. Mascuch (Hyland v. Mascuch), 136 F.2d 706, 30 C.C.P.A., Patents, ——. With respect to the three interferences, Nos. 64,517, 73,561 and 73,630, supra, they are the subject of separate decisions rendered concurrently herewith.

In this opinion we will consider Interferences No. 69,428, No. 73,562 and No. 73,564.

While the interferences will be separately considered in this opinion, to avoid repetition we state the following facts which are applicable to all the interferences here considered.

The interfering applications are as follows:

Hyland filed October 9, 1928;
Paulson filed July 15, 1929;
Shumaker filed July 7, 1931.

From the foregoing it will be seen that in all of the interferences here considered Hyland is the senior party, and the burden was upon each of the junior parties to establish priority of invention in himself by a preponderance of evidence.

The principal decisions of the Patent Office tribunals were rendered in Interference 69,428, and their decisions in Interferences 73,562 and 73,564 were held to be controlled by their decisions in aforesaid Interference 69,428 (Appeals 4689, 4690).

All the parties took voluminous testimony, and a single record was made with respect to all of the interferences here considered.

The involved invention relates to the shielding of spark plugs for airplane engines to improve the use of radio signaling thereon.

Appeals Nos. 4689 and 4690—
Interference No. 69,428.

In this interference the applications of eight parties were originally involved, but when the testimony was taken three of the parties had apparently been eliminated, leaving as parties to the interference the parties here involved, viz., Hyland, Paulson and Shumaker, and also one Hector Rabezzana, and one Joseph J. Mascuch, the latter being a party to Interference 73,630 (Appeals 4695, 4696), supra, not here considered.

From the Examiner of Interference's award of priority to Hyland, Rabezzana did not appeal to the Board of Appeals, and was thus eliminated from the interference. Shumaker, Paulson and Mascuch appealed to the board, which affirmed the decision of the Examiner of Interferences awarding priority of invention to Hyland with respect to all of the counts. From such decision of the board Shumaker and Paulson have respectively appealed to this court. Mascuch did not appeal and thus he has also been eliminated from this interference.

The interference consists of three counts of which count 1 is illustrative and reads as follows: "1. In combination, a spark plug comprising a metallic cap and a stem having an outlet, a conductor connecting to said stem at the outlet, a dielectric member seated against said cap and enclosing said outlet and a metallic coating enclosing said conductor and a metallic coating on said member electrically connected with said metallic cap, said coatings being in the form of a thin sheath."

All of the counts of this interference and the counts of the other interferences here considered relate to what are known as "Straight Type Shielded Spark Plugs" as distinguished from "Elbow Type Shielded Spark Plugs" which are the subject of our opinion in Interference 73,630 and counts 1, 2 and 3 of Interference 73,561.

It should be noted, however, that it is Hyland's claim that the counts here involved are generic to both types of plugs. At the outset of our discussion upon the merits of the case we would observe that the Examiner of Interferences in his decision gave most careful consideration and discussed at great length the claims of the respective parties, quoting at length from the testimony bearing upon the issues

raised. His decision comprises thirty pages of the printed record. Much of the decision, however, relates to the contention of Mascuch. The board likewise in its decision discussed at considerable length the various issues involved, its decision comprising nine pages of the printed record.

■ Most of the questions calling for decision are questions of fact, upon which both of the Patent Office tribunals concurred in their conclusions. In view of this fact the rule is here applicable that upon questions of fact concurring decisions of the Patent Office tribunals will be affirmed by us unless they are manifestly wrong. This rule is so well established as to require no citation of authority.

We would also observe that the cases involve to a considerable degree inferences to be drawn from certain evidence as to which there might be differences of opinion.

With these preliminary observations we come to the discussion of the merits of the controversy. The principal questions at issue appear to be:

1. Dates of conception to which the parties Paulson and Shumaker are entitled,

2. Dates of reduction to practice to which the respective parties are entitled, and

3. Whether Paulson derived the invention from Hyland or Shumaker or either of them, or, in other words, the issue of originality.

While this last question was raised before the Patent Office tribunals, in view of their finding as to Hyland's prior date of conception and diligence in reducing the invention to practice, it was not necessary to decide the question of originality raised against Paulson.

It appears that Hyland at the time his testimony was taken was vice president and general manager of the Bendix Radio Corporation; that from June 1926 until September 1932 he was an assistant radio engineer at the Naval Research Laboratory located at Washington, D. C.; that Paulson, at the time his testimony was taken and at all the times hereinafter mentioned, was chief engineer of the "B. G. Corporation" which is a manufacturer of aircraft spark plugs; that he is a graduate of the Carnegie Institute of Technology; that Shumaker was at the time of taking his testimony, and at all the times hereinafter mentioned, an employee of the United States as a mechanical engineer at Wright Field, Dayton, Ohio; that he is an electrical engineer and a graduate of Ohio State University.

Both of the Patent Office tribunals found that Hyland is entitled to the date of April 23, 1928, for conception of the invention defined in the counts. This date is not challenged by either Paulson or Shumaker. The Patent Office tribunals further found that Hyland had not established an actual reduction to practice prior to his filing date October 9, 1928, and hence was confined to said last named date for constructive reduction to practice.

It was further held, however, that Hyland was diligent in reducing the invention to practice.

With respect to Paulson, it was held that he was not entitled to an earlier date than May 1928 for conception of the invention, and that he had actually reduced it to practice on June 26, 1928. The Patent Office tribunals held that Shumaker had not established conception of the invention prior to May 1928. There was no finding with respect to reduction to practice by Shumaker, this not being deemed material in view of the finding that Hyland was the first to conceive the invention and was diligent in reducing it to practice.

The only contention that Paulson makes before us is that the Patent Office erred in holding that Hyland was diligent in reducing the invention to practice.

Shumaker contends that he conceived the invention prior to the date awarded Hyland, that he disclosed it to Paulson in May 1928 and prior thereto, and that Paulson's reduction to practice on June 26, 1928, inures to his (Shumaker's) benefit as the original inventor of the genus of the counts. It is upon this theory that Shumaker argues that he is entitled to an award of priority of invention of the subject matter of the counts here involved.

Of course, if Shumaker has failed to establish conception of the invention prior to the conception of Hyland, and if Hyland was diligent in reducing the invention to practice, the question of whether Paulson derived the invention from Shumaker is immaterial in this proceeding. That question is decided in the companion case, Appeal 4684, Interference No. 64,517, supra, decided concurrently herewith and hereinbefore referred to.

Therefore we will first consider on this branch of the case the question of Shumaker's established date of conception. He relies upon a certain drawing which was introduced in evidence as Shumaker's Exhibit 4 to establish his date of conception prior to the conception of Hyland. This sketch is dated July 15, 1927. Shumaker testified that he completed the sketch and signed it on that day. In the lower right-hand corner of the sketch there appears the following in pencil, "Witnessed and explained to John J. Rose," and underneath the same is the following, "R. L. Shumaker, July 15, 1927." The sketch was received in evidence without objection.

One John James Rose was a witness on behalf of Shumaker, and testified with respect to said Exhibit 4 that he believed that the words "Witnessed and explained to" were in Shumaker's handwriting, that the name "John J. Rose" was his signature, and that he believed that the words "July 15, 1927" and the name "R. L. Shumaker" were in Shumaker's handwriting. The witness, however, testified that he had no independent recollection of witnessing the sketch. With reference to the contents of the sketch he testified as follows:

"XQ.51. Now, you stated that you did not know of any changes that had been made. Can you at this time state exactly what was on those sketches when you signed them, if you signed them?

\*     \*     \*     \*     \*

"A. Well, I don't know just what you are driving at here. As I stated, the thing is very vague to me now—so long since this thing has taken place, and the general idea of shielding was in mind when this sketch was made, and I imagine I just took it for granted that shielding was incorporated in the plug, and so on—the general details I didn't go into the thing to determine."

The Examiner of Interferences upon this showing held that the sketch, Exhibit 4, was not sufficiently corroborated to establish conception as of its date. The Examiner of Interferences further stated as follows:

"Furthermore, there is strong evidence adduced from the inventor that the sketch itself is of an incomplete shield in that there is a substantial portion of the plug above the shell which remains unshielded and there is no ground connection for the shield.

"XQ.667. In accordance with this sketch, there is no ground connection shown for the shielding; is that correct? A. That is right.

"XQ.668. There is a substantial part of the plug above the shell that is not covered by any form of shielding; is that correct? (Shumaker testimony)

"Therefore, the sketch Shumaker exhibit 4 if proven could not satisfy counts 2 and 3 which require grounding of the entire shielding through the metallic shell of the spark plug, nor count 1 which requires that the shield for the spark plug dielectric and the shield for the ignition current conductor be electrically connected."

Both of these holdings were approved by the Board of Appeals.

■ We are in full accord with the views of the Patent Office tribunals that Shumaker has failed to establish conception of the invention prior to the date accorded to Hyland. There is no sufficient corroboration by Rose or any other witness relative to the date of said Exhibit 4, or of any conception of the invention by Shumaker prior to Hyland's filing date.

Therefore, Exhibit 4 is a merely self-serving declaration by Shumaker as to the date of his conception.

■ It is elementary in patent law that in an interference proceeding the mere unsupported evidence of the inventor as to the fact and date of conception cannot be regarded as sufficient proof of prior conception. See Crane et al. v. Carlson, 125 F.2d 709, 29 C.C.P.A., Patents, 879.

Being of the opinion that said Exhibit 4 has not been sufficiently corroborated, it is unnecessary for us to consider the holdings of the Patent Office tribunals that said Exhibit 4 does not respond to the counts here involved.

In view of the foregoing it is clear that if Hyland was diligent in reducing the invention to practice, there was no error in the awarding of priority of invention to him.

With respect to this matter, the first question to determine is when did his duty of diligence begin?

Both of the Patent Office tribunals have held that neither Shumaker nor Paulson are entitled to a date for conception prior to May, 1928, and we are in accord with this holding.

It appears that Hyland's date of conception as found by the Patent Office tribunals is based upon his Exhibit 60, which is a

communication from Hyland dated April 23, 1928, addressed to "The Chief of the Bureau of Engineering," which communication described the involved invention, and requested "that application for letters patent be made immediately in the name of the inventor." The communication is signed by Hyland. It bears certain endorsements, the last of which reads as follows:

"From: Bureau of Engineering
"To: Judge Advocate General.
"Subject: Radio Telegraph—Shielded Spark Plug—Request for application for patent in name of L. A. Hyland.
"1. Forwarded, requesting that patent protection be obtained on Shielded Spark Plug, as described in basic letter and enclosure, the invention of L. A. Hyland.
"E. L. Bennett,
"Assistant to Bureau.
"Copy to Director Naval Research Laboratory."

Hyland testified that he had conceived the invention between the 15th and 20th of April, and that on the same day that he conceived it he met Paulson at the radio laboratory at the Naval Air Station; that he then disclosed the invention to Paulson and requested him to make up a design of a shielded spark plug embodying his invention; that Paulson declined his request and expressed the opinion that Hyland's suggestions were not the best solution of the problem.

Paulson in his testimony denied this conversation and stated that he was not in Washington at all at the times testified to by Hyland, but was in Detroit, Michigan, and introduced evidence tending to confirm such claim.

Hyland further testified that shortly after April 23, 1928, he took a vacation of approximately four weeks, returning to Washington on May 28th; that the first day of this vacation was spent with Paulson in New York at the plant of the B. G. Corporation; that he there discussed at length with Paulson his invention and again requested him to make up some shielded spark plugs along the lines that he (Hyland) suggested.

With respect to the result of this conversation Hyland testified: "I enjoyed the day, but I left there with a very definite impression that Mr. Paulson could not see the idea of making up plugs, the only appealing factor during the discussion being

that I would do my best to convince the Navy Department to buy some of these plugs at relatively high prices under the old contract still existing and which still had not been fulfilled."

It should here be stated that the B. G. Corporation was under a contract with the Navy Bureau of Aeronautics to furnish "5 sets Radio Ignition Shielding for J-4A engines"; that this contract was dated as of June 30, 1926, and on August 4, 1927, said corporation delivered three "sets of suppressor equipment" under the said Navy contract. None of the sets so delivered included shielded spark plugs. At the time of Hyland's conception of the invention here involved, the contract of the B. G. Corporation had not been completed, and Hyland gave this as a reason why he endeavored to interest Paulson in embodying his invention in the construction of a spark plug.

With respect to the visit of Hyland to Paulson in New York, Paulson, while admitting the said visit of Hyland and that there may have been some conversation about shielded spark plugs, denied that Hyland had disclosed to him the involved invention.

Upon Hyland's return to Washington on May 28th, he addressed a letter to Paulson, which was introduced in evidence as Hyland's Exhibit 62, and reads as follows:

"Lawrence A. Hyland
"Radio Engineer
"1359 Lawrence St. N. E., Washington D. C.
"May 28, 1928.

"My dear Paulson:
"Arrived back today from a vacation which was not so hot in its early days but which improved with age. All hands contracted flu in the first few days and for a week we were bedridden but had a grand time during the last three weeks.

"While I haven't called up Price as yet, there is no one at the Laboratory that knows anything about a shipment of any shielded spark plugs so I take it that the job is, as yet, incomplete.

"How are you progressing? Have you run into unexpected difficulties or has the order book kept you busy?

"Now that I am back on the job I would be glad to be in receipt of any information that you may have available on the progress of these plugs and to assist in any way that I am able in the perfection of a plug that will solve that radio and the spray problem.

"Please accept my thanks for your kindness during my recent visit and my assurance of a better understanding of what problems you have to meet in the design of a plug. I thoroughly enjoyed my inspection of both the plug and jewelry factories.

"With kindest personal regards, I am

"Yours very truly,

"L. A. Hyland"

Paulson replied to this letter on May 31, which letter was received in evidence as Paulson's Exhibit No. 27, and reads as follows:

"Manufacturers of the B. G. Spark Plug

"136 West 52nd Street, New York City.

"May 31, 1928.

"Mr. Lawrence A. Hyland,

"1359 Lawrence St., N. E.,

"Washington, D. C.

"My dear Mr. Hyland:

"Your letter of May 28th received and I was very glad to hear that you had an enjoyable vacation.

"Since I saw you last I have been kept pretty busy with the regular spark plug work, but managed to work out a fairly good looking design of the shielding plug. Parts are being made now for 25 of these plugs. I expect to have them assembled at least by Tuesday of next week. These are Regular 1Xa plugs with a brass shield over the top with the ignition wire coming straight into the end of the plug. The over-all length of the plug to the hole in which the ignition wires come out of the plug is approximately the same as our regular plug so that it will work out fairly well in most engine installations.

"So far I have not been able to work out a practical design of the shield for the small plug, but hope to be able to do so in time to get a set in operation by the middle of June.

"I was in Washington Tuesday and saw Commander Price, and explained what we were doing, and was informed that tests could be arranged immediately upon receipt of the shielded plugs.

"I received communications from both the Belden Manufacturing Company and the Army inquiring about shielded plugs.

"I understand that the Department of Commerce, Bureau of Standards, Radio Corporation of America, Pitcairn Airplane Company, and the Ford Motor Company, are all interested in the problem of radio shielding.

"I hope to see you in Washington the latter part of next week with a set of the shielded plugs for test.

"Very truly yours,

"George M. Paulson."

With respect to the activities of Hyland after his return to Washington on May 28th, toward actual reduction to practice of the invention, the Examiner of Interferences in his decision stated: "Hyland also testified that he tried ineffectively and in an effort that was later abandoned to build a plug along the lines of his invention over a period of several weeks beginning about the time he received the letter from Paulson referred to above. This testimony was corroborated to some extent by the witnesses Mirick, MacGregor, and Tierney, none of whom however was able to fix the exact time in 1928 when Hyland was working on this project although MacGregor did recall having seen a welded plug within a few weeks of April 28, 1928, the date he witnessed Hyland exhibit 59 (Hyland record, pages 224, 225, 232, 233)."

It appears that a set of radio shielded plugs embodying the involved invention were made by the B. G. Corporation and delivered personally by Paulson to the Navy Yard in Washington, D. C., on June 5, 1928; that they were installed in a plane by Commander DeBaun (a witness for Paulson) and Hyland, and were successfully tested on June 26, 1928.

With respect to this test, the Examiner of Interferences stated:

"It may be observed that Paulson, like Hyland is claiming this radio test flight on June 26, 1928, with Paulson plugs (Paulson exhibit 23d) as an actual reduction to practice. Nevertheless evidence contemporary with this date of June 26, 1928, introduced on behalf of Hyland (Hyland exhibits 2, 64 and 76-F) refer to these plugs as having been obtained from B. G. Corporation 'following a suggestion from the Naval Research Laboratory' and Hyland exhibit 2 (dated July 16, 1928) referring to an attached photograph No. 3 (Hyland exhibit 36-A) states that:

"'The tests herein described and the suggestions for design of plug cover as well as for shielded plug are due to Assistant Radio Engineer L. A. Hyland.'

"This evidence is considered sufficient to indicate that Hyland believed, as is contended in his behalf, that he was engaged

in work on a device for which he had conception at least as of the date of April 23, 1928, when he requested that an application be filed by the Government in his behalf (Hyland exhibit 60), and is believed to establish that up to the date of at least July 16, 1928, Hyland was diligent whether or not Paulson's exhibit 23-d was in fact the result of a separate and independent conception."

It further appears that on July 11, 1928, Hyland addressed a letter to the Judge Advocate General, requesting the appointment of an associate attorney to assist in the prosecution of his application.

With respect to this letter Hyland testified as follows:

"A. The Navy Department at that time, or the Judge Advocate General's office was pretty well loaded up with work; and the reports that I had were that in some cases they were as far behind as two years in writing up and submitting patent applications to the Patent Office. I was very much interested in the subject matter of this application and had discussed the matter. somewhat with other engineers at the Laboratory, who· told me that if I wanted to get some rapid action on this thing that I had better ask to have an associate attorney appointed and to pay for that attorney's services myself.

"Q123. Who was Mr. John B. Brady, referred to in the second paragraph of this letter of July 11, 1928? A. Mr. Brady was a prominent patent attorney, who specialized in radio matters and was well known to the engineers at the Naval Research Laboratory and had their confidence and was recommended to me very generally by those engineers."

One Keeler, a patent attorney of the Judge Advocate General's office, testified that Hyland's Exhibit 60 describing the invention was received in the office of the Judge Advocate General on May 10, 1928, and was assigned to him for the preparation of a patent application; that at that time he and two other patent attorneys employed in the office were charged with preparing and prosecuting applications for patents; that during May the office had 105 applications awaiting preparation and 146 applications awaiting amendment; that because of·press of work the preparation of Hyland's application was turned over to Brady as requested by Hyland; that a copy of Hyland's disclosure, Exhibit 60, was sent to Brady early in August 1928; that Brady

prepared a draft of the application and submitted it to the Judge Advocate General's office; that on August 21, 1928, the application was returned to Brady with the following memorandum:

A. "Memorandum for Mr. John B. Brady:

"Returned herewith are the specification, claims and drawings in Navy Case No. 562, Lawrence A. Hyland.

"Certain corrections have been noted on the face of the specification and claims.

"The numbering on the drawings are not in accordance with Rule 52(f) of the Rules of Practice of the. U. S. Patent Office, particularly with the last sentence thereof. For instance—numeral character 20 in· Figure 5 designates the casing, while in Figure 6 it designates a gasket. Correction of this fault will require a careful review of both the specification and the drawings, as I have not indicated all of the necessary corrections.

"The specifications and claims are not written in accordance with the Amendment to Rule 45 regarding paragraphing.

"Unless you have very good reasons to the contrary of which I am not cognizant, I would like some broader claims in the case, modeled after Claim 8, but broader in scope.

"Harold Dodd, Lieutenant Commander, United States Navy."

The testimony of Hyland's private attorney Brady was stipulated, which is in substance as follows: That on and prior to August 21, 1928, his prepared rough draft of Hyland's specifications was corrected by Commander Dodd, certain changes were suggested, and the returned application was received in his office on August 23, 1928; that subsequently the application was revised, after which it was executed by Hyland and was filed by Brady on October 9, 1928.

Upon all the foregoing the Examiner of Interferences held that Hyland was diligent in reducing the invention to practice and therefore awarded priority of invention to him.

The Board of Appeals in its decision stated: "After a ·careful consideration of Hyland's activities and record in this respect, it is believed that the examiner's position to the effect that Hyland was diligent during the period from April 23, 1928 until the filing of his application, October 9, 1928, is correct."

We are not convinced that the Patent Office tribunals erred in this holding. It is well established that the question of diligence must always be decided in the light of the particular facts in the individual case. Hull v. Davenport, 90 F.2d 103, 24 C.C.P.A., Patents, 1194.

The evidence admittedly establishes that immediately prior to Hyland's leaving for his vacation, which was before either Paulson or Shumaker conceived the invention, he addressed a letter through proper channels to the Chief of the Bureau of Engineering, which disclosed the invention and requested that patent protection be secured therefor. This was received in the Judge Advocate General's office on May 10, 1928.

It seems clear, therefore, that Hyland cannot be chargeable with lack of diligence between the time of his conception and his return to Washington on May 28th. We believe the testimony fairly shows that between the time of his return and June 26, 1928, he endeavored to build a plug embodying his invention, but abandoned such construction; that he assisted in installing the set of plugs furnished by the B. G. Corporation of June 5th is well established; also that he participated in the first flight test.

The official report of this test dated July 16, 1928, and sent to the Chief of the Bureau of Engineering was introduced in evidence. The last paragraph thereof reads as follows: "10. The test herein described and the suggestions for design of plug cover as well as for shielded plug are due to Assistant Radio Engineer L. A. Hyland."

Of course this statement above quoted is not evidence that the invention tested was made by Hyland, but it has some bearing as tending to corroborate the claim that Hyland believed that the invention tested was his.

Without further discussing this branch of the case, we are of the opinion from the entire evidence that under all the circumstances it should be held that Hyland has established diligence in reducing the invention to practice from the time the critical period began in the latter part of May 1928 until the early part of July 1928.

As hereinbefore stated Hyland on July 11th made a request through appropriate channels for the appointment of a private attorney to assist in the preparation and prosecution of his application, which was granted. Mr. Brady was appointed and Hyland's disclosure was sent to him early in August. Brady prepared a draft of the application and submitted it to the Judge Advocate General's office for suggestions. It was returned to Brady on August 23, 1928, and he thereafter prepared the application in final form, had it executed by Hyland, and filed it on October 8, 1928.

While there are some intervals in activities by the attorneys, we are not convinced that the Patent Office tribunals erred in holding that there was reasonable diligence shown upon the part of the attorneys in preparing the application.

It must be borne in mind that the evidence is that in May there were pending 105 applications for patents and 146 applications were awaiting amendment.

There is no evidence that applications in the Judge Advocate General's office were not prepared in the order of their receipt, or that Hyland's application was put aside for any reason. The attorney in charge of the application testified that owing to press of work the application was sent to Brady. The application consists of seven pages of the printed record herein, and we are not willing to hold that Brady is clearly chargeable with lack of diligence at any time from August 21 to October 8, during which time he revised the application, had it executed by Hyland and filed it.

The brief for Shumaker does not argue the question of Hyland's diligence but Paulson, in support of his contention that diligence by Hyland has not been established, relies very largely upon our decisions in the following cases, viz.: Hull v. Davenport, 90 F.2d 103, 24 C.C.P.A., Patents, 1194; Krebs et al. v. Melicharek, 97 F.2d 477, 25 C.C.P.A., Patents, 1362; Brown v. Barton, 102 F.2d 193, 26 C.C.P.A., Patents, 889; Crane et al. v. Carlson, 125 F.2d 709, 29 C.C.P.A., Patents, 879.

While as hereinbefore stated, the question of diligence always depends upon the facts in each individual case, we think it proper to relate certain features of the cited cases which distinguish each of them from the case at bar.

In Hull v. Davenport, supra, the party Hull on June 3, 1930, turned over to a firm of attorneys papers necessary to the preparation of an application for a patent. The application was filed on January 31, 1931. There was nothing in the record to

show any activities of the attorneys during this period. While the critical period during which diligence was necessary was only five weeks, we held that there was no showing of diligence by Hull immediately prior to Davenport's entry into the field or thereafter.

In the case Krebs et al. v. Melicharek, supra [97 F.2d 480], we stated:

"From the time the request for patent protection reached the office of the Judge Advocate General until the time of filing, a period of about six months, the record shows no activity on the part of either appellants or their employer department, and no reason to excuse delay in filing the application. There is accordingly no evidence that the appellants or their employer were active from just prior to the time appellee entered the field, February 13, 1930, and filed his involved application. While the period of diligence is only about three and one-half months, there has not been suggested any fact from which diligence can be concluded.

"It is true that the appellants were not in a position to do anything further after they had forwarded their request for patent protection. It is also true that if we should agree with their contention that the Government is not chargeable with diligence, it would follow that in similar circumstances a department of Government could indefinitely delay the filing of an application for patent in derogation of rights accruing to one who has been diligent in filing an application for patent on the same subject matter.

"We are unable to see, in this case, why the same rule should not apply to the Government as applies outside of the Government. No case has been cited, nor have we been able to find a case sustaining appellants' contention in this regard. If there was any fact or circumstance here to excuse the Government for a delay of six months in merely examining the prior art and drawing and filing the application, it should have been shown in the record. This showing has not been made."

In the case of Brown v. Barton, supra, we found that the attorney charged with the preparation of an application for a patent had laid aside the application there involved and worked several days upon cases having higher docket numbers than the involved application, and there was no explanation in the record of why this was done.

In the case of Crane et al. v. Carlson, supra, Crane et al. filed a report of their invention with the Patent Liaison Office at Wright Field, an army post, on August 28, 1935, and we held that there was no evidence of any activity between September 16, 1935, and November 22, 1935, either in actually reducing the invention to practice or in the preparation of an application for a patent, without any explanation of the delay.

These cases are so easily distinguishable from the case at bar that further comment thereon is unnecessary.

Upon the whole record we are not convinced that there was error in awarding priority of invention to Hyland, and the decision of the Board of Appeals is affirmed.

### Appeal No. 4692—Interference No. 73,562.

This appeal involves Interference No. 73,562 between the application of Hyland, filed October 8, 1928, and an application of Paulson, filed July 15, 1929. These are the same applications as are involved in Appeals 4689 and 4690, hereinbefore considered.

Two counts are involved. Priority with respect to both counts was awarded to Hyland by both Patent Office tribunals, and Paulson has appealed from the decision of the Board of Appeals.

Originally Mascuch, hereinbefore referred to, was a party, but he did not appeal from the decision of the Board of Appeals.

Count 1 is illustrative and reads as follows: "1. In combination, a spark plug for aircraft engines including a stem having a terminal, a threaded shell for engagement with a threaded aperture in the engine cylinder wall, metallic means for supporting said stem threadedly mounted in said shell, solid dielectric means seated against said supporting means and enclosing said terminal, metallic enclosing means intimately contacting said dielectric means, said dielectric means substantially filling the space between said stem and its enclosing means, a conductor having a terminal for connection to said first named terminal, metallic enclosing means encasing said conductor, and means for electrically connecting said last named enclosing means to the end of the first named enclosing means, both said enclosing means being grounded through said shell and providing a com-

plcte electrically conductive shield for said stem and said conductor."

The Board of Appeals in its decision stated: "In our decision in companion Interference No. 69,428, we are affirming the decision of the Examiner of Interferences awarding priority to Hyland and since the issues are similar and the proofs of the parties are the same as those discussed in that decision, to which reference is hereby made, the decision of the Examiner of Interferences awarding priority of invention of the subject matter in issue to the senior party, Lawrence A. Hyland, is affirmed."

█ We are in accord with the foregoing statement of the Board of Appeals, and in view of our decision in Appeals 4689, 4690, the decision of the board herein is affirmed.

Appeals Nos. 4693 and 4694—
Interference No. 73,564.

█ These are appeals by Paulson and Shumaker, respectively, from a decision of the Board of Appeals in Interference No. 73,564, which affirmed a decision of the Examiner of Interferences awarding priority of invention to Hyland with respect to the four counts there involved.

The interference is between the same applications of Hyland and Paulson and Shumaker involved in Appeals 4689 and 4690, supra.

In this interference there were originally five applications involved, the additional parties being one Hiscock and Mascuch, hereinbefore referred to. Hiscock seems to have been eliminated from the interference in its early stages, and Mascuch did not appeal from the decision of the Board of Appeals.

Count 1 is illustrative and reads as follows: "1. In combination, a spark-plug for internal combustion engines, comprising a metal jacket having therein an electrode spaced from the jacket by insulating material, said electrode and insulating material projecting from one end of the jacket, an insulated conductor electrically connected to said projected end of said electrode and having metallic shielding covering the insulation thereon, a dielectric member surrounding and closely fitting the said projecting end of the electrode insulating material for at least a substantial distance of its length and enclosing the connected end portions of said conductor and said electrode, and a relatively thin metallic shielding covering and in contact with the exterior surface of said dielectric member whereby a shielded spark-plug of reduced dimensions is produced, said shielding being electrically connected at contiguous ends there-of and adapted to be grounded to the engine with which the spark-plug is used."

In its decision herein the Board of Appeals stated:

"In a decision being rendered concurrently herewith in companion Interference No. 69,428, we have held that the senior party Hyland is entitled to prevail by reason of his being the first to conceive and constructively reduce to practice.

"The issues and the proofs of all the parties appear to be the same in this interference as in said companion interference and for the reasons given in our decision therein, to which reference is hereby made, the decision of the Examiner of Interferences awarding priority of invention of the subject matter in issue to the senior party, Lawrence A. Hyland, is affirmed."

Being in accord with the statement of the board above quoted, and in view of our decision in Appeals 4689, 4690, the decision of the board herein is affirmed.

To recapitulate, the decisions of the Board of Appeals are affirmed in Appeals Nos. 4689, 4690, 4692, 4693 and 4694.

Affirmed.