**TIDEWATER PATENT DEVELOPMENT COMPANY, Incorporated, Appellant,**

v.

**GILLETTE COMPANY, Appellee.**

**No. 7843.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 8, 1959.

Decided Dec. 10, 1959.

As Corrected Jan. 7, 1960.

George B. Finnegan, Jr., New York City (Worthington & White, Norfolk, Va., and Albert H. Brodkin, New York City, on the brief) for appellant.

Bruce Bromley, New York City (Willcox, Cooke, Savage & Lawrence, Richard B. Spindle, III, Norfolk, Va., Cravath, Swaine & Moore; John D. Calhoun; Fish, Richardson & Neave, Henry R. Ashton, Edgar H. Kent and Rynn Berry, New York City, on the brief), for appellee.

John M. Friedman, New York City (Harry Martin, pro se, on the brief), for Harry Martin, amicus curiae.

Adolph A. Rubinson, Chicago, Ill., for Helene Curtis Industries, Inc., by permission of the Court.

Before SOBELOFF, Chief Judge, and SOPER and BOREMAN, Circuit Judges.

SOPER, Circuit Judge.

■ This appeal is taken from a judgment of the District Court in an action brought under 35 U.S.C. § 146 (derived from R.S. § 4915) to determine the correctness of a decision of the Board of Patent Interferences in the United States Patent Office whereby priority was awarded to Everett G. McDonough over Harry Martin with respect to an invention relating to the permanent waving of human hair. After a hearing in the District Court the judge came to the opposite conclusion and accordingly held that Martin was the first inventor and authorized the Patent Office to issue a patent to him or his assignee upon his application.

In the Patent Office an interference was declared by the Commissioner of Patents on February 15, 1952, between application No. 255,725 filed by Martin on November 9, 1951, and application No. 110,239 filed by McDonough on Au-

gust 13, 1949. Priority was awarded to McDonough and accordingly patent No. 2,736,323 was issued to him on February 28, 1956. The application for this patent was filed as a continuation in part application based on patent No. 2,577,710 previously issued to McDonough on December 4, 1951, on an application filed June 16, 1941. Both of the McDonough patents relate to permanent waving solutions and methods. They have been the subject of protracted litigation in the Second Circuit where both were declared invalid in suits for declaratory judgments filed sub nomine Helene Curtis Industries v. Sales Affiliates. The cases in which patent '710 was declared invalid are reported in D.C., 105 F.Supp. 886, affirmed 2 Cir., 199 F.2d 732; D.C., 121 F.Supp. 490; D.C., 131 F.Supp. 119, affirmed 2 Cir., 233 F.2d 148. In an effort to cure the defects in patent '710, the second McDonough patent '323 was obtained but it was also declared invalid as the result of further litigation in cases reported in D.C., 148 F.Supp. 340; 2 Cir., 247 F.2d 940; D.C., 159 F.Supp. 582; 2 Cir., 254 F.2d 470, and D.C., 161 F.Supp. 345.

In the present appeal, McDonough's claim to priority is represented by Tidewater Patent Development Company, the appellant, which acquired title to the two McDonough patents through a series of assignments. Martin's claim to priority is represented by Gillette Company, the substituted appellee, which acquired title to Martin's application No. 255,725, above mentioned.

Martin was also the holder of patent No. 2,350,178 issued to him on May 30, 1944, on an application filed March 13, 1941. This patent also relates to a hair waving solution but, as will hereafter appear, does not claim the precise invention on which the interference proceeding was based.

The litigation in the Second Circuit was in progress during the pendency of the present suit in the District Court below and was completed before the judgment therein was entered; but only the decision in Helene Curtis Industries v. Sales Affiliates, Inc., D.C., 121 F.Supp. 490, seems to have been called to the judge's attention. The pending appeal was taken by Tidewater notwithstanding the declaration of invalidity of both McDonough patents in the Second Circuit for the apparent purpose of protecting the owner of the patents in such further litigation as may ensue; and an earnest effort has been made to establish McDonough's priority. The Gillette Company, the appellee, on the other hand, has made only a nominal attempt in this court to support Martin's claim to priority or to defend the judgment of the District Court, for the reason apparently that, pending the appeal, it has not only acquired Martin's interest in Martin's application No. 255,725 but has also come to an agreement with Tidewater by which Gillette is released from all liability for past or future infringements of the McDonough patent. Indeed, Gillette, relying on the New York decisions, asserts that there is no patentable invention in the discovery so that neither McDonough nor Martin is entitled to a patent; and it argues, for the reasons set out below, that this court should pass not only on the issue of priority but also upon the issue of patentability, and should join the Second Circuit in holding that the discovery does not involve patentable invention, and direct the dismissal of the pending suit. Accordingly, we have been obliged to confine our examination to the findings and conclusions of the District Judge on the one hand and the findings and conclusions of the Board of Patent Interferences on the other without assistance from the appellee in this appeal.

We have considered the question of priority and have reached the conclusion that the judgment of the District Court overturning the decision of the Patent Office tribunal should not be sustained. When the losing party in an interference proceeding in the Patent Office, instead of taking an appeal to the Court of Customs and Patent Appeals under 35 U.S.C. § 141, chooses to bring a civil action in a District Court of the

United States under 35 U.S.C. § 146, it is the duty of the court, under Morgan v. Daniels, 153 U.S. 120, 125, 14 S.Ct. 772, 773, 38 L.Ed. 657, to accept as controlling the decision of the Patent Office on the question of priority, "unless the contrary is established by testimony which in character and amount carries thorough conviction." See also Sanford v. Kepner, 3 Cir., 195 F.2d 387, affirmed 344 U.S. 13, 73 S.Ct. 75, 97 L.Ed. 12. The District Court is directed by the statute, upon motion of either party, to receive in evidence the testimony and exhibits of the record in the Patent Office, and in the pending case this was done in the District Court and, although additional evidence was taken, the facts brought out in the Patent Office proceeding constituted by far the greater part of the evidence.

In this case the issue is whether McDonough or Martin is entitled to priority in the discovery of the subject matter precisely defined in the following two counts of the interference:

"Count 1: The method of permanently changing the configuration of hair on the living human scalp without damage to the hair structure, including the steps of imparting the desired configuration to the hair and treating of the hair with a permanent waving solution comprising ammonia and an amount of thioglycolate equivalent to about 2% to about 10% of thioglycollic acid, said solution having a pH between 7 and 9.5 and then fixing said configuration.

"Count 2: A permanent waving composition comprising a water solution of ammonia and about 6% of thioglycollic acid, said solution having a pH of about 9."

In deciding this issue, the District Judge, speaking in general terms, notes in his opinion that both contestants, that is Martin, a practical but untrained worker in chemistry, and McDonough, a trained chemist with extensive educational background including a degree of Ph.D., were working in the same general field of permanent hair waving before Martin's application for patent was filed on March 13, 1941, and McDonough's application for patent was filed on June 16, 1941; and that the voluminous record was complicated by the fact that opposite conclusions had been reached by two tribunals which had considered the contest between the claimants, the federal courts in the Second Circuit, in D.C., 121 F.Supp. 490; 2 Cir., 233 F.2d 148, having reached the conclusion "that Martin first discovered the formula in controversy" and the Board of Patent Interference of the Patent Office having decided in favor of McDonough.[1] In reaching his own conclusion upon the issue, the District Judge does not purport to follow the rule laid down in Morgan v. Daniels, which imposes a heavy burden upon one who sues in the District Court to upset a priority finding of the Patent Office. Instead he applies the ordinary rule that the burden of proof rests on the plaintiff in an action; and he states the conclusion that Martin "was the first to conceive and reduce to practice the formula involved * * * without at this time discussing in detail the testimony of the various witnesses and the documentary evidence". The precise finding ultimately reached without out discussion of the evidence was that

1. We have not found it necessary to discuss the bearing of the Second Circuit's decisions on the issue of priority. Martin was not a party, but only a witness in these cases and the rule of corroboration which applies in priority controversies was not invoked. It is of more importance that the District Court in the pending case was in error in stating that the controversy decided in Helene Curtis Industries v. Sales Affiliates, D.C., 121 F.Supp. 490; 2 Cir., 233 F.2d 148, related to the *formula* in controversy in the pending case. The fact is that Helene Curtis Industries v. Sales Affiliates, supra, was concerned with the infringement and patentability of the formula set out in the claims of the earlier McDonough patent '710, while the controversy in the pending case relates to the formula set out in McDonough's later patent '323. There are substantial differences between the two formulae.

Martin conceived and reduced to practice the invention prior to June 1940, whereas McDonough did not arrive at this point in his period of experimental research until shortly before his application filed June 16, 1941.

Some months later more detailed findings of fact were filed which were prepared by Martin's attorney and submitted to the opposing counsel at the judge's request. These findings, however, do not discuss the evidence so as to show that Martin's discovery antedated McDonough's. They do not discuss or examine McDonough's evidence at all except to say that his conception and reduction to practice did not occur until shortly before June 16, 1941, his work theretofore consisting of experimentation. With respect to Martin, the findings state the general conclusion that his conception and reduction to practice of the invention occurred prior to June 1940, and in support of this conclusion the following items are listed without discussion:

1. Several applications of Martin for patents, of which the earliest (No. 383,-204) was filed March 13, 1941, and resulted in the issuance of his patent No. 2,350,178 on May 30, 1944;

2. the testimony of Dr. H. Louis Shoub as to certain work done by him for Martin in June 1940; and,

3. nine items of documentary evidence of various dates between September 25, 1940 and June 11, 1941.

In contrast with this mere summary is the exhausting and painstaking opinion of the Board of Interferences of the Patent Office, in which all the evidence for and against the rival claims is examined in detail, and the conclusion is reached that McDonough was the first to conceive the invention and the first to reduce it to practice on June 16, 1941, when he filed application No. 398,325 on which patent No. 2,577,710 was issued to him on December 4, 1951. Since this Patent Office record of McDonough's discovery is indisputable, the only issue that needs to be examined is whether Martin has established a date prior to June 16, 1941.

In weighing the evidence in Martin's favor on this point, we must apply the established rule that an inventor's own testimony with respect to his invention and reduction to practice constitutes a selfserving declaration and cannot be given probative force even if it is uncontradicted and convincing unless it is supported by adequate corroboration. Akers v. Papst, 113 F.2d 136, 140, 27 CCPA 1400; Shumaker v. Paulson, 136 F.2d 686, 689, 30 CCPA 1156. With this rule in mind we consider first Martin's application of March 13, 1941, which resulted in his patent No. 2,350,178. This is the only Martin application which antedates McDonough's first application of June 16, 1941, which resulted in McDonough patent No. 2,577,710. The Patent Office records furnish the necessary corroboration of the discovery set out in these documents, but the most cursory examination of Martin's application and patent shows that they fail to disclose the invention set out in the counts of the interference. They do not disclose the constituents of the composition therein described and hence do not support Martin's claim for a priority. The sole claim of the patent calls for "the process of curling hair, which consists in treating the rolled up hair with a solution containing hydroxylamine sulfate and an alkaline substance." Obviously the claim makes no disclosure that the hair waving composition should consist of thioglycollic acid and that the solution should have a pH within definite limits. The specification does speak in general terms of thioglycollic acid as an accelerator of permanent hair waving and gives certain formulae, including the acid and an alkaline, but the pH of such compositions would vary greatly from a pH far below to a pH far above those set out in the interference counts. This is an extremely important factor because the pH rating set out in the counts is confessedly the heart of the patent. The evidence clearly demonstrates the significance of the pH rating, since a composition with pH ratings below those given in the counts would

not be effective while compositions with ratings above those given in the counts would be destructive to the hair. Consequently, the Board of Interferences were completely justified in saying that no one reading Martin's specification, however skilled in the art, would understand that a pH between 7 and 9.5 in relation to the required ingredients was an agency in the Martin process.[2] The evidence indicates that Martin had little conception of the importance of the pH rating at the time of his application for the patent.

The McDonough patents, on the other hand, do disclose that the degree of alkalinity stated in the interference counts is a crucial factor in the permanent waving of human hair. Both McDonough patents, '710 and '323, were declared invalid in the Second Circuit decisions because the results obtained, although useful and effective, do not differ in kind from the results achieved by the prior art and, therefore, lacked the essential element of criticality. See Helene Curtis Industries v. Sales Affiliates, D.C., 121 F.Supp. 490, 496, affirmed 2 Cir., 233 F.2d 148, 152. We have no occasion on this appeal, as we shall show, to express an opinion upon the validity of the McDonough patents or the correctness of the Second Circuit decisions. But they clearly demonstrate that Martin's application of March 13, 1941, does not disclose the invention set out in the counts of the interference.

This application was the only evidence in Martin's favor, which was cited by the appellee in its perfunctory argument on this appeal to support the judgment of the District Court. We proceed, nevertheless, to examine the other items listed in the District Court's finding of fact upon which the judgment in Martin's favor was based. They are listed in the opinion below without discussion or demonstration of their bearing upon the question of priority. They relate for the most part to the period prior to March 13, 1941. Some thirteen of the exhibits indicate that Martin was actively experimenting in hair waving solutions and giving demonstration of the efficacy of his findings prior to that date, but the memoranda or letters set out in in these items of proof lack corroboration and, with perhaps one exception, fail to disclose the ingredients of the composition employed, and in that one case the memorandum is so illegible as to require Martin's aid to decipher it, and even when explained by him does not disclose a composition within the pH limits of the interference counts.

Other documentary evidence somewhat more specific in its disclosures, which was offered in the interference proceeding is listed in the findings of the District Court. It received particularly careful examination by the Board of Interferences and was found insufficient for reasons which we cannot reject as erroneous. This evidence, consisting of memoranda or correspondence, may be summarized as follows:

1. Memoranda dated March 7, 1941, designated as "Good working formulae for hair waving compositions", set out various compositions of thioglycollic acid and ammonia. The stated pH rating in these compositions far exceeded the limits of the pH ratings in the interference counts; but Martin offered in evidence certain ex parte tests made on his behalf which tended to show that the pH figures listed in Martin's memoranda were too high for the ingredients specified in the formulae and when corrected came within the pH limits of the interference counts. The Board rejected this testimony because the formulae did not set forth the concentration or purity of the acid or basic contents of the ingredients and hence the tests could not be relied on. Moreover, the Board

---

2. The pH scale extends from 0 to 14 and measures acidity or alkalinity, pH 7 being neutral, solutions greater than pH 7 alkaline, and solutions below acidic. The differences between the ratings may be very great. For example, the alkalinity of pH 8 is ten times that of pH 7, pH 9 is one hundred times pH 7, and pH 10 is one thousand time pH 7.

concluded that the memoranda showed that Martin's conception did not embrace the idea that the pH rating was essential to the invention. It cannot be said that these conclusions were erroneous.

2. For like reasons a memorandum of November 23, 1940, with regard to a hair waving test given to a young lady is insufficient. It not only lacks corroboration but the formulae set out prescribes pHs outside the required limits and the ex parte tests purporting to show that the correct pHs were within the limits of the invention cannot be accepted since Martin's formulae did not show the concentration or purity of the ingredients which he used.

3. A letter of December 17, 1940, from an attorney to Martin setting out a formula previously received from him which contained ingredients including thioglycollic acid and ammonia; but no pH is prescribed and the description of the quantities of ingredients is inadequate and suggests excessive alkalinity.

4. On March 10, 1941, certain conferences took place between Martin, on one side, and colleagues of McDonough, at which demonstrations of Martin's hair waving solutions were made. He did not disclose the ingredients of his solutions, stating only that one had a pH of 9 but it was objectionable because of its odor and that a better one had a pH of 11. The failure to state the ingredients of the first solution and the excessive alkalinity of the second demonstrate the insufficiency of this proof.

Our general conclusion is that the items of proof offered on Martin's behalf and listed in the findings of the District Court do not justify a rejection of the finding of the Board of Interferences awarding priority to McDonough. The examination and discussion of the evidence by the Board on each of these items of proof is thorough and persuasive and our independent examination (to say the least) does not produce a thorough conviction that the Board's conclusion was wrong and should therefore be reversed.

We come to the main contention of Gillette that the controlling issue in the case is not priority of invention but the validity of the patent and that, under the circumstances related, it becomes the duty of the court to examine this question and, following the precedent set by the Second Circuit, declare the invention unpatentable. The doctrine laid down in Hill v. Wooster, 132 U.S. 693, 10 S.Ct. 228, 33 L.Ed. 502 and Sanford v. Kepner, 344 U.S. 13, 73 S.Ct. 75, 97 L.Ed. 12, is invoked to the effect that in a priority proceeding under R.S. § 4915 the District Court cannot overturn a prior decision of the Board of Interferences and direct the issuance of a patent to the losing party in the Patent Office proceeding unless the court finds that the claims of the patent involve invention. So it is said that, in the pending case, the District Court, having found that Martin was the prior inventor, should have then considered the question of patentability and, had it done so, it would have necessarily reached the same conclusion as the Second Circuit and dismissed the complaint.

This is a strange position for an appellee to take but we have nevertheless examined it. The rule is well established and was observed, at least literally, in the District Court when it reached the conclusion that the Patent Office was wrong. The conclusions of law stated by the District Court include the statement that "the method and compositions stated in said counts are patentable inventions or discoveries within the contemplation of Title 35 of the United States Code." This conclusion is broad enough in its terms but it is, nevertheless, without meaning under the circumstances, since it is agreed that no examination of the question of validity was made in the District Court and, hence, if we were to affirm the judgment of the District Court on the issue of priority, it would become our duty to remand the case for consideration of the question or to pass on the validity of the patent ourselves. We have, however, reached the conclusion that the Patent

Office was justified in awarding priority to McDonough so that the case must be remanded to the District Court with directions to dismiss the complaint, and there is no need to give consideration to the issue of patentability.

Reversed and remanded.