Earl R. JACKSON, Plaintiff,

v.

DUNHAM–BUSH, INC., Great Atlantic & Pacific Tea Co.,

and

Roche and Hull, Inc., Defendants.

Civ. No. 10867.

United States District Court
D. Maryland.
July 17, 1963.

378

Walter G. Finch, Janet C. Dougherty and J. Francis Ford, Baltimore, Md., for plaintiff.

John W. Avirett, 2d, Baltimore, Md., Curtis, Morris & Safford, Robert D. Spille, and John A. Mitchell, New York City, for defendants.

WINTER, District Judge.

Plaintiff has sued for infringement of his Patent No. 2,755,371, issued July 17, 1956, for a defroster for freezing coils. Joined as defendants are the manufacturer of the alleged infringing device, Dunham-Bush, Inc. (hereafter called "Dunham-Bush"), an assignee, through a subsidiary, of Patent No. 2,611,587, issued to Cecil Boling on September 23, 1952, the Great Atlantic & Pacific Tea Co., a user of the alleged infringing device, and Roche and Hull, Inc., a distributor of the alleged infringing device. Dunham-Bush assumed the defense for all defendants, and has defended by the assertion that plaintiff's Patent No. 2,755,371 is invalid but, if valid, not infringed. The alleged infringing device also is a defrosting device for refrigerators, deep freezers and cooling systems.

One of the results of efficient artificial refrigeration is to cause the condensation and freezing of moisture on the cooling coils, and this has the effect of impairing the heat withdrawal properties of the cooling coils. It is necessary, therefore, that from time to time this frozen moisture be removed. Needless to say, a prime objective of this result is to do it quickly and with as little heating of the area being refrigerated as possible. The process of defrosting may be accomplished in at least two ways, either by the application of heat to the exterior of the cooling coils or the application of heat to the interior of the cooling coils. Jackson's patent, the accused device and the prior art cited in the case all employ the latter approach because it accomplishes the desired defrosting in less time. Interior application of heat has this effect because the ice and frost next to the cooling coil melts first so that the remaining ice and frost break off of their own weight.

Plaintiff's patent described a freezing unit "formed of tubing * * * provided with holes at predetermined bends to receive heat unit closures to enclose the heating units and prevent the heaters from coming into direct contact with the freezing medium," Jackson Patent, p. 1, col. 2, lines 4-8. "Each closure is closed at one end, and open at the other end to receive the heater, and is welded * * *

to provide a leakproof joint between the closure and the bends. The heating units are connected into an electrical circuit and are automatically turned off and on at predetermined intervals by the use of any of the conventional time or temperature control electric switches that can be used to stop the circulation of the refrigerant and turn on the heaters to raise the temperature of the freezing medium in the freezing unit or coils at predetermined intervals without appreciably raising the temperature of the freezing medium in the rest of the system * * *," Jackson Patent, *supra*, lines 10–22.[1] This device is said to allow the heaters to be replaced when necessary without draining the freezing medium from the system, and also to enable the system to be defrosted more quickly when using this "invention". Specifically, in the patent it was claimed:

"In a refrigeration system of the dry expansion type, an evaporator comprising a plurality of parallel straight sections, a plurality of U-shaped sections each associated with two straight sections of one of said pairs for connecting said sections to each other, an enclosing element projecting from the exterior of certain of said U-shaped sections into one

---

1. Visually, plaintiff's conception was:

July 17, 1956     E. R. JACKSON     2,755,371

DEFROSTER FOR FREEZING COILS

Filed March 20, 1953

of the straight sections associated therewith, an electric heating element removably positioned in each of said enclosing elements and means forming with said heating elements an electric circuit whereby refrigerant in all of the portions of said evaporator may be subjected to a heating influence to melt from the evaporator frost and ice formed thereon."

Although plaintiff testified, without corroboration, that he conceived of his claimed invention in the latter part of 1951, he stipulated that he first disclosed it to another about February, 1953.[2]

Plaintiff made application for a patent March 20, 1953 and, after some amendment to the application, Patent No. 2,755,371 was granted July 17, 1956. It appears that in granting the patent, the Patent Office considered the following previously issued patents: Bayer, No. 1,676,068, issued July 3, 1928; Pierson, No. 1,731,058, issued October 8, 1929; Alex, No. 1,764,139, issued June 17, 1930; and Dick, No. 2,001,323, issued May 14, 1935. Of these the Patent Office considered the Dick patent, No. 2,001,323, as the principal objection to the granting of a patent to plaintiff and, in the course of the processing of plaintiff's application, his claims and specifications were amended to overcome the effect of the Dick patent.

Plaintiff's is a paper patent. The device has never been manufactured nor, indeed, has any model ever been constructed. Plaintiff, over a period of years, has sought to interest seventeen manufacturers in a license to manufacture his device; but to no avail.

The alleged infringing device is manufactured by Dunham-Bush, utilizing some aspects of the Boling patent, No. 2,611,587. The Boling patent teaches a cooling or freezing coil of a refrigeration system constructed from two tubes, one of small diameter and one of larger diameter, with a special fin assembly separating the tubes. The fin assembly is first placed in the larger tube, then the smaller tube is slipped into the larger tube and also passed through the fin assembly. By means of a mandrel or wedge pushed through the center of the smaller tube, the smaller tube is expanded and its diameter enlarged, so that it squeezes the fin assembly against the larger outer tube and results in a tight-fitting construction with metal to metal contact between the inner tube, the fin assembly and the outer tube.

When the refrigeration system is in operation the refrigerant is pumped through the area between the outer tube and the inner tube. In this area is also found the fin assembly. The pumping of the refrigerant results in rapid cooling of the outside surface of the outer tube and cooling action in the area outside the outer tube. When ice or frost forms on the outside surface of the outer tube, the flow of refrigerant is stopped and drained from the tube. Heat is then introduced into the inner tube. In the Boling patent the source of heat is heated gas or heated liquid which flows through the inner tube and then into header troughs which connect the individual inner tubes to form a complete system. Although the precise device described in the Boling patent continues to be manufactured by Dunham-Bush, Dunham-Bush now manufactures in quantity devices of the type described in the Boling patent, but in which an electrical heating element has been substituted for the heated gas. When the defrosting process is in operation heat is transferred from the inner tube to the outer tube, principally by means of conduction through the metal fin assembly and not principally by radiation, as required by the Jackson patent.

*Validity of the Jackson Patent.*

The defense of invalidity of the Jackson patent rests upon the claim that it was anticipated by the prior art and,

2. Plaintiff seeks to be relieved of this stipulation because of the testimony of Mr. Thomas Ellwood Lavin, who claimed that the alleged invention was disclosed to him in March, 1952. The plaintiff's request will be hereafter discussed.

hence, is invalid, 35 U.S.C.A. § 102(e), codifying the rule of Milburn Co. v. Davis etc. Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651 (1926). See also Sperry Rand Corporation v. Knapp-Monarch Company, 307 F.2d 344 (3 Cir. 1962). Factually, this claim is based upon the Boling patent, applied for July 27, 1950, and issued September 23, 1952; Powers patent, No. 2,628,479, applied for October 2, 1950, and issued February 17, 1953; and Schultz patent, No. 2,877,630, applied for May 20, 1952, and issued March 17, 1959. It should be noted that none of the prior art references relied upon by the defendants were considered by the Patent Office in the granting of the Jackson patent. As to them, the usual presumption of validity attaching to the Jackson patent is accordingly weakened, Heyl & Patterson, Incorporated v. McDowell Company, 317 F.2d 719 (4 Cir. 1963); Senco Products, Inc. v. Fastener Corporation, 269 F.2d 33 (7 Cir. 1959); Hobbs v. Wisconsin Power & Light Company, 250 F.2d 100 (7 Cir. 1957); Gillette Safety Razor Co. v. Cliff Weil Cigar Co., 107 F.2d 105 (4 Cir. 1939); Hanks v. Ross, 200 F.Supp. 605 (D.C.Md.1961).

To consider the prior art, the essence of the Boling patent has been described and need not be restated. The Powers patent concerns a defrosting element and enclosure well having great similarity to that taught by the Jackson patent. The Powers patent, however, contemplates the use of coils, separate from, but connected to, the cooling coils, in which are positioned a plurality of electrical heating elements. In order to defrost the refrigeration system it is contemplated that by the use of valves and pumps the refrigerant will be directed to the coils having the heating units, and be heated and then returned to the cooling coils, where heat is transferred to the coils from the refrigerant, thus elevating the temperature of the former from the inside out until the frozen moisture is melted and drops from the cooling coils. Like Jackson, the heating elements are positioned in the straight sections and connected U-shaped coils, but, unlike Jackson, the Powers patent does not discuss the removability of the heating elements.

The Schultz patent, again, involves insertion of a heating element surrounded by insulating material, which are both enclosed in an enclosure tube. This enclosure tube, in turn, is placed within the cooling coil. The Schultz patent teaches that the heating wire, the insulation and the copper tubing may be manufactured to form a unit for suitable assembly into the coil, or the copper tubing may be made an integral part of the coil with the heating wire and insulation forming an independent unit adapted for sliding into the copper tubing. In either event, for defrosting the heating unit is activated, resulting in a heat transfer to the outside of the cooling coil, thus causing frozen moisture to melt and to drop off of the cooling coil.

A careful consideration of the Schultz patent, in the light of the claim of the Jackson patent, shows that each essential element of the claim in the Jackson patent was anticipated in the Schultz patent if, indeed, not elsewhere. The Jackson patent claims that it is applicable for "a refrigeration system of the dry type;" Schultz does not specify the type of refrigeration system, wet or dry, and, significantly, the Jackson application, as filed, likewise made no such designation. At trial the evidence showed that whether the system was wet or dry was of no significance to the essence of Jackson's claimed invention. Indeed, the Jackson application claimed as to both wet and dry refrigeration systems. The claim was amended restrictively to avoid interference with the Dick patent.

Jackson calls for an evaporator, i. e., cooling coil, comprising "a plurality of parallel straight sections; a plurality of U-shaped sections each associated with two straight sections of one of said pairs and connecting said sections to each other;" Schultz contemplates the same, as does the Powers patent, and the Boling patent, although in the latter the U-shaped sections are more squared than

U-shaped. Jackson requires "an enclosing element projecting from the exterior of certain of said U-shaped sections into one of the straight sections associated therewith;" Powers' enclosure is essentially the same, Schultz is similar, except that Schultz permits the enclosing element to continue through several U-shaped sections, as well as the connecting straight sections, and Boling limits the enclosing element to the straight sections, although penetrating both ends of any given straight section.

Next, Jackson requires "an electrical heating element *removably positioned* in each of the said enclosing elements" (emphasis added). This seems to be the very essence of Jackson's claim, but it, too, is found in the prior art. The Schultz patent makes it clear that the heating element may be built into the straight and U-shaped sections at the time of manufacture "or that, in other cases, the copper tubing may be made an integral part of the coil, *with the heating wire and insulation forming an independent unit adapted for sliding into the copper tubing*" (emphasis added). True, Schultz, at this point, speaks only of inserting the heating element after manufacture of the coil and inner tubing, but there is implicit in the concept that what may be inserted into the copper tubing may also be withdrawn from the copper tubing, however, later in Claim 4 Schultz expressly states that the heating wire is capable "of easy insertion

and *removal.*" [3] Additionally, Powers teaches that the heating elements are "disposed within a relatively small diameter tube, which may be filled with a fluid as, for example, oil, and secured within a larger diameter conduit section, the annular space between the tube and the conduit section providing a passageway for the flow of the liquid refrigerant." From the diagram in Powers accompanying the text, it is fairly obvious that the heating element may be removed without draining the refrigerant from the system, and the experts so testified. Lastly, Jackson requires that the heating elements be energized with an electric current whereby the refrigerant in all of the portions of the evaporator may be subjected to a heating influence to melt from the cooling coils frost and ice formed thereon. This requirement and this effect are fully described in Schultz, and are also described in Powers, except that in Powers the refrigerant is heated prior to its entry into the cooling coils in order to melt the frost and ice. Similarly, in Boling the heat is applied directly within the cooling coils, but the source described is heated gas, rather than an activated electric heating element.

That each of the elements in the Jackson claim can be found in the prior art, particularly the Schultz patent, is a fair conclusion, amply supported by the expert testimony which was presented in the case. Dr. Christie, the plaintiff's ex-

---

3. Testimony was offered by plaintiff to the effect that if the heating element in the Schultz patent were introduced into a freezing coil having many convolutions, difficulties would be encountered, either in inserting the heating element or, particularly, in withdrawing the heating element. The point was also raised that if the heating element could be inserted and, thereafter, a subsequent fusing took place between the heating element and the enclosing tube, it would be impossible to remove the heating element. Mr. Hughes, the expert for Dunham-Bush, testified that difficulties to be encountered in inserting or withdrawing the heating element could be minimized by proper selection of a heating element encased in glass insulation and the use of silicon lubricant and, further, that the use of glass insulation would greatly diminish the possibility of welding taking place. Also, it should be noted that the Schultz patent does not teach in how many convolutions of freezing coil or of encasing copper tubing the heating element must be inserted, and for a person skilled in the art it would be possible to employ the Schultz teaching and arrange for the copper tubing to pierce the freezing coil at given convolutions so as to render insertion and withdrawal of the heating element a simple matter. The Court, therefore, concludes, as a matter of fact, that the Schultz patent teaches removability of the heating unit without the necessity of draining the system of refrigerant.

pert, so testified. Dr. Christie's testimony was that, although he did not find the same combination of the elements of the Jackson claim, each of those elements was known and existed prior to the Jackson claim. Later, he testified that all of the elements of the Jackson claim were found in combination in the Schultz patent, and, with the possible exception that the Jackson patent depended upon heat transmission by radiation and the Powers patent upon heat transmission by conduction, were also found in the Powers patent. Mr. Hughes, the expert of Dunham-Bush, was in full agreement with the conclusions of Dr. Christie that all of the elements of Jackson's claim were old, and that all were found in the Schultz patent. Dr. Christie confirmed, also, the obvious inference to be drawn from the text and diagram in the Powers patent that the heating elements were removable.

Because the Schultz patent so clearly anticipated the claimed invention of Jackson, and because the Schultz patent was applied for May 20, 1952, while the Jackson patent was not applied for until March 30, 1953, it became important for Jackson to attempt to establish a date of invention earlier than that of Schultz. At the beginning of the trial, plaintiff stipulated that he had not disclosed his invention until in or about February, 1953, when he made disclosure to a certain Thomas Ellwood Lavin. Mr. Lavin was called as a witness by the plaintiff, according to Mr. Lavin's own testimony, without prior interview by, or even prior introduction to, plaintiff's counsel, and Mr. Lavin testified that he had known the plaintiff since 1928, that the plaintiff disclosed his invention at a time when he and Mr. Lavin were driving to Havre de Grace, Maryland, and that the disclosure took place, roughly, in March, 1952. Mr. Lavin was unable to describe what had been disclosed to him, except that he was shown some picture which he did not understand, and that the plaintiff said that he had "finally hit it" and "I got it this time." Mr. Lavin recalled that the plaintiff had said that the invention involved a heating element inside a freezing element, and that it had something to do with defrosting refrigeration equipment. Mr. Lavin had no recollection of whether the plaintiff had said anything about the removability of the heating element, and Mr. Lavin could not identify any diagram of the claimed invention as the picture which was shown him in the automobile in transit to Havre de Grace. Based on the testimony of Mr. Lavin, plaintiff moved, after the trial, to strike the portion of the stipulation in which he stipulated that his first disclosure of the claimed invention did not occur until February, 1953.

The Schultz patent must be considered as prior art to Jackson. True, plaintiff testified that he conceived of his alleged invention early in 1951, a date prior to the Schultz application, but plaintiff's uncorroborated testimony in this regard cannot establish that date as the date of invention, Tidewater Patent Development Co. v. Gillette Company, 273 F.2d 936 (4 Cir. 1959); Oliver Machinery Co. v. Gellman, 104 F.2d 11 (6 Cir. 1939); United Shoe Machinery Corp. v. Brooklyn Wood Heel Corp., 77 F.2d 263 (2 Cir. 1935). Nor can plaintiff rely upon March, 1952 as the date of invention. He stipulated to the contrary. He has made no showing that he entered into the stipulation inadvertently or that defendants would not be prejudiced by relieving him, post trial, from his stipulation, two facts of prime importance to be considered in determining whether to relieve him from his stipulation, Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 22 S.Ct. 698, 46 L.Ed 968 (1902); The Hiram, 1 Wheat. 440, 4 L.Ed. 131 (1816); 9 Wigmore on Evidence (1940 Ed.), §§ 2588–2590, pp. 586, *et seq.* But more importantly, both with regard to the question of whether to relieve plaintiff from his stipulation and the merits of the date of invention, the testimony of Mr. Lavin is in itself insufficient to establish a date of invention prior to the date Schultz's application for a patent was filed, under the authorities cited above and Searle v. Glarum, 179 F.2d

974, 37 CCPA 896 (1950); Adam v. Roth, 173 F.2d 259, 36 CCPA 875 (1949); 1 Walker on Patents (6th Ed.), § 109, pp. 134, *et seq.*

It should be noted that after Mr. Lavin testified, Jackson, although he testified in rebuttal on other points, did not claim that his recollection was refreshed and offer testimony that he made disclosure to Mr. Lavin prior to March, 1953. Nor did he offer testimony to show what drawing, or what type of drawing, was shown Mr. Lavin which Mr. Lavin could not himself identify. Taken in all, Mr. Lavin's testimony is insufficient to constitute the clear and convincing proof customarily required to establish a pre-filing, or, in this case, pre-stipulated disclosure date, of inventorship. Even if relieved of his stipulation, plaintiff has not established a date of invention prior to March, 1953 and, accordingly, his request to be relieved of his stipulation as to that date is denied.

If the Schultz, as well as the Powers and Boling patents, are to be considered as prior art to Jackson's claimed invention, the latter is invalid because anticipated. Plaintiff comes into court with a *prima facie* presumption of validity attaching to his patent, 35 U.S. C.A. § 282. This presumption is weakened, under the authorities previously cited, as to the Schultz, Powers and Boling patents, because they were not considered by the Patent Office. Admittedly, Jackson's patent is at best a mere combination of elements known in the prior art. Not only is the law clear that combination patents present the most difficulty in finding true invention, but, also, that combination patents should not be granted unless the elements of the combination patent perform or produce a new, different or additional function or operation in the combination than that theretofore performed or produced by them, A. & P. Tea Co. v. Supermarket Corp., 340 U.S. 147; 71 S.Ct. 127, 95 L.

Ed. 162 (1950); Heyl & Patterson, Incorporated v. McDowell Company, *supra*;[4] Entron of Maryland, Inc. v. Jerrold Electronics Corp., 295 F.2d 670 (4 Cir. 1961); Kay Patents Corp. v. Martin Supply Co., 202 F.2d 47 (4 Cir. 1953).

But this case does not turn on presumptions, or on the weakening of presumptions. Even if afforded full presumptive validity, the Jackson patent is invalid because a consideration of the prior art and the undisputed testimony of the experts for both parties leads the Court to the legal conclusion that, besides being anticipated by Schultz and the others, 35 U.S.C.A. § 102(e), the Jackson claimed invention does nothing more than employ the teachings of the Schultz, Powers and Boling patents in such a way as "would have been obvious at the time the invention was made to a person having ordinary skill in the art * * *," 35 U.S.C.A. § 103. Stated otherwise, Jackson's combination of known elements fail to perform or produce a result different from that produced before his conception. As such, Patent No. 2,755,371 was improvidently granted and will be decreed invalid.

*Infringement.*

From what has been said as to the invalidity of the Jackson patent, a decision on infringement is unnecessary to a decision in the case. But in the event of an appeal and for the purpose of complete disposition of the case, the Court will decide the issue of infringement, assuming for that purpose that the Jackson patent is valid.

At the outset, the Jackson patent has never been reduced to commercial application; hence, for purposes of determining infringement, its claims are to be narrowly construed. Yates v. Jones, 176 F.2d 794 (4 Cir. 1949). In a determination of possible infringement, the rule to be applied is that plaintiff must show that every essential element of the combi-

---

4. 317 F.2d at p. 722.
   "In a combination patent, unless the improved elements coact in a new way with the elements of the patent disclosed in the prior art, the claims may not be allowed. * * * It is usually difficult to find true inventiveness in a combination patent * * *."

nation, or its equivalent, is embodied in the accused device. If any essential element of the combination, or its equivalent, is omitted, infringement is avoided, Entron of Maryland, Inc. v. Jerrold Electronics Corp., *supra*; Kay Patents Corp. v. Martin Supply Co., *supra*.

■ The essence of invention in a device manufactured under the Boling patent differs markedly from the claim of the Jackson patent in regard to heat transfer. It should be remembered that the whole purpose of a defroster of a refrigeration system is to accomplish a speedy melting and removal of ice and frost on the cooling coils, speedy to the degree that the area to be refrigerated is not appreciably warmed either by the operation of the defroster device or by natural causes as a result of the period of time consumed in defrosting. Boling accomplished this objective by heat transfer by conduction via the fins between the outer tubing of the cooling coil and the inner tubing which encases the heating element. This transfer takes place at a time when, for all practical purposes, the refrigerant is removed from the interstices between the two tubes. Admittedly, there is some heat transfer in a Boling device by radiation, as well as by convection, but it is deminimus and inconsequential, principal reliance being placed on heat transfer by conduction. That the Boling concept is sound is demonstrated by the commercial success it has enjoyed.

As the expert testimony showed, the Jackson claim relies upon heat transfer by radiation, (a) from the heating element to the outer surface of the cooling coil and (b) from the heating element to the outer surface of the enclosing coil and by convection from the outer surface of the enclosing coil to the outer surface of the cooling coil, via the medium of the gaseous refrigerant which is not removed during the defrosting process. That this concept differs from the Boling concept is self-evident, and that it differs

so markedly that it cannot be said that it is an equivalent was established by the evidence in the case.

Testimony from the expert for Dunham-Bush, not contradicted in principle, but questioned only as to degree by the expert for Jackson, established that in order for the concept of heat transfer claimed by Jackson to accomplish quick defrosting of the cooling coils, phenomenally high temperatures in the heating element must be employed, high to the point that they could exceed the melting point of the heating element. As stated, Dr. Christie did not dispute this conclusion in principle. He expressed some doubt as to the actual temperature which would be required, i. e., 3,500° F., but offered no estimate of the required temperature in substitution. In practice a Boling device can accomplish defrosting in fifteen minutes. Under comparable conditions, a Jackson device would take 2,000 times as long, so that in practice a Jackson device would work by heat leaking into the refrigerated area and acting on the *exterior* of the freezing coils.

A second element of Jackson absent in a Boling device is an enclosing well piercing the cooling coil at only one end. In a Boling device the enclosing well pierces the cooling coil at both ends. It should be noted that on the issue of validity, plaintiff greatly stressed that the tube enclosing the heating element pierced the cooling coil at only one end, was sealed at the other and, hence, was a well, in arguing that he was not anticipated by Schultz. Obviously, plaintiff places great stress on this element of his combination absent in a Boling device.

The Court finds that there are absent in a Boling device at least two of the essential elements, or their equivalents, of the Jackson claim. *A fortiori*, a Boling device does not infringe the Jackson claim.

Counsel may agree upon a form of order in accordance with this opinion.